# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALAN J. ROSS** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 12-0998** |
| **v.** | : | |
| | : | |
| **BENNETT MEYER,** | : | |
| **MEYER-CHATFIELD CORP.,** | : | |
| **DAVID L. BRAVERMAN,** | : | |
| **JOHN KASKEY, and** | : | |
| **BRAVERMAN KASKEY PC** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                JUNE 19, 2014

## MEMORANDUM OPINION

### INTRODUCTION

This Court is presented with a *motion to dismiss* filed by Bennett Meyer, Meyer-Chatfield

Corporation, David L. Braverman, John Kaskey and Braverman Kaskey, P.C. (collectively,

"Defendants/Plaintiffs Braverman Kaskey") pursuant to Federal Rules of Civil Procedure (Rules)

12(b)(6) and 12(b)(7), [ECF 41], which seeks dismissal of the *second amended verified*

*complaint for breach of contract and fraud* filed by Alan J. Ross ("Ross"), [ECF 34], on the

grounds that: (1) the malpractice claim is barred by the applicable statute of limitations and/or

fails to state a claim for relief; (2) neither David L. Braverman nor John Kaskey were parties to

the referenced contract; (3) Ross cannot insist upon performance of a contract when he himself is

guilty of a material breach; (4) the claims of "fraud" are barred by the parol evidence rule, the

"gist of the action" doctrine, and/or by the plain language of the operative agreements; and (5)

Ross has failed to join indispensable parties. Plaintiff, acting *pro se*, opposes the motion to

dismiss, [ECF 43], and the motion is ripe for disposition. For the reasons set forth herein, this

Court grants Defendants' motion to dismiss.

## PROCEDURAL BACKGROUND

This matter has a complex procedural history that can be summarized as follows:

On February 22, 2012, Plaintiff and Alan J. Ross Insurance Agency, Inc., filed this action against Defendants alleging breach of contract, promissory fraud, fraud in the inducement, fraudulent concealment, and legal malpractice.

On April 16, 2012, Meyer-Chatfield Corporation, Bennett Meyer, Zcrackerbox, LLC, and Braverman Kaskey, P.C. (collectively, "Plaintiffs/ Defendants Zcrackerbox") filed a separate breach of contract action (hereinafter "Defendants' Complaint") in state court against Alan J. Ross, individually and doing business as SAVE Associates, and against Alan J. Ross Insurance Agency, Inc., also doing business as SAVE Associates (collectively, Defendants Ross). This state action was removed to federal court on May 18, 2012, and docketed as CIV. A. 12-2760.

By Order dated December 3, 2012, the Honorable Stewart Dalzell, consolidated these two actions pursuant to Rule 42(a)[1] under CIV. A. 12-998; denied without prejudice a motion to dismiss filed in the 12-2760 action by Defendants Ross; removed Alan J. Ross Insurance Agency, Inc., as a plaintiff, and continued the matter with Alan J. Ross as the sole plaintiff. [ECF 18].

On December 21, 2012, Ross reasserted his motion to dismiss the complaint filed by Plaintiffs Zcrackerbox. [ECF 21].

On January 7, 2013, Plaintiffs Zcrackerbox filed a *cross-motion for entry of default and default judgment* against Alan J. Ross Insurance Agency, Inc. [ECF 23]. A response thereto was filed. [ECF 24]. By Order dated August 16, 2013, the cross-motion was granted and all pleadings filed by "Alan J. Ross Insurance Agency, Inc.," as an incorporated sole proprietorship and not represented by licensed counsel, were dismissed. [ECF 38].[2]

In the interim, on August 8, 2013, Ross was granted leave to file a second amended verified complaint (hereinafter "Ross's Complaint"). [ECF 34]. On September 13, 2013, Defendants Braverman Kaskey filed the instant motion to dismiss. [ECF 41].

---

[1] If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a).

[2] On July 30, 2013, this matter was reassigned to this Judge. *See* [ECF 30].

On January 15, 2014, Defendants Braverman Kaskey filed a *notice of judicial disposition that has res judicata and collateral estoppel affects* thereby providing notice of a decision in a related matter – *Meyer-Chatfield, et al. v. Alan J. Ross, et al.*, CIV. A. 12-966 (N.D. Ill. 2012) (the "Illinois Action"). [ECF 47].

By Order dated March 18, 2014, Ross and Defendants Braverman Kaskey were directed to supplement their respective pleadings and arguments in the pending motion to dismiss, and to address what implications, if any, the notice of *res judicata* and collateral estoppel have on the motion to dismiss.[3] [ECF 58]. Supplemental briefs were submitted. [ECF 59, 61].[4]

## FACTUAL BACKGROUND

The following is a brief summary of the relevant facts gleaned from the pleadings and supplemental briefs:[5]

### The Patent

Ross invented the *Pooled Benefit Trust* ("PBT"), designed as a business method for pooling death benefits of institutionally-owned life insurance policies,[6] and obtained a United States Patent for it, identified as Number 5,974,390, dated October 26, 1999 (the "Patent").[7] SAVE Associates ("SAVE") is alleged to be a sole proprietorship and brand name consisting of Alan J. Ross and is indistinguishable in operation or for tax purposes from Alan J. Ross.[8]

---

[3] *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001) ("The party seeking to take advantage of claim preclusion has the burden of establishing it.") (citation omitted).

[4] In a related motion for partial summary judgment filed on May 9, 2014, [ECF 67], Plaintiffs Zcrackerbox brought to this Court's attention that on March 28, 2014, Ross assigned all of his right, title, and interest in the Patent to IPB, subsequent to Judge Zagel's January 15, 2014, memorandum and order.

[5] Ross's Complaint includes the following counts: Breach of Contract – The Demand Letter (Count I); Breach of Contract – The Unauthorized and Secret Agreement (Count 2); Breach of Contract – Preventing Ross from Enrolling Policyowners (Count 3); Breach of Contract – As to Payments Due Ross (Count 4); Breach of Contract – The Exclusion of SAVE (Counts 5, 6); Breach of Contract – The Exclusion of SAVE from Ownership of IPB (Count 7); Promissory Fraud – The MC and BK Knowingly False Representation (Count 8); Fraud in the Inducement – The Settlement Agreement False Inducement (Count 9); Declaratory Judgment (Counts 10, 11); Specific Performance (Count 12); Fraudulent Concealment (Count 13); and Legal Malpractice (Count 14). *See* Ross's Compl. [ECF 34].

[6] Dfts' Mem. in Supp. Mot. at 4 [ECF 41-1].

[7] *Id.* The Patent enables sales through the enrollment of bank-owned life insurance ("BOLI"), carrier-owned life insurance ("IOLI"), non-BOLI and non-IOLI corporate-owned life insurance ("COLI") or government-owned life insurance ("GOLI") through which specialized funds are set aside as a trust. Settlement Agrt. ¶ 1, Dfts' Supp. Brief, Ex. A [ECF 59-1].

[8] Ross's Compl. ¶ 2.

*The Marketing Agreement*

In 2006, Ross and Bennett Meyer entered into an agreement for Meyer-Chatfield to market the PBT. In 2008, Meyer-Chatfield expressed an interest in obtaining an equity interest in SAVE's 50% ownership in the Patent. After negotiations, a general oral understanding was reached which provided Meyer-Chatfield a significant minority equity interest in the Patent.[9]

*The Settlement Agreement*

The Chicago firms, Balshe LLC and The Simon Law Firm (collectively "Balshe") had also been negotiating with Ross on the purchase of the Patent.[10] Negotiations broke down when Ross declined Balshe's offer, and on May 27, 2008, Balshe filed a *Complaint for Injunctive and Other Relief* against Ross and SAVE in the Circuit Court of Cook County, Illinois. This matter was removed to the District Court for the Northern District of Illinois under the caption *Balshe LLC and The Simon Law Firm v. Alan J. Ross and SAVE Associates*, CIV. A. 08-3256,[11] and assigned to the Honorable James B. Zagel. The complaint averred, *inter alia*, that Ross had sold to Balshe all of his right, title, and interest to the Patent.[12] Apparently, Meyer-Chatfield intervened claiming an interest in the Patent and the outcome of the District Court action.[13]

It was in this federal court action that the Braverman Kaskey, P.C. law firm agreed to represent Ross. As payment for the professional legal fees, Ross agreed to give Braverman Kaskey, P.C. an equity interest in a newly-formed entity, *MRB Pooled Benefits, LLC*, to which Ross agreed to transfer ownership and interest in the Patent.[14]

The lawsuit settled, and Balshe and Ross executed the *June 26, 2008, Settlement Agreement and General Release* ("Settlement Agreement"), wherein they agreed, *inter alia*, to settle all disputes and claims between them regarding the ownership and commercial exploitation of the Patent.[15] While Meyer-Chatfield was not a party to the 08-3256 Illinois federal case, it was a signatory to the Settlement Agreement due to its legal interest and its right to market the PBT, as a sales representative.[16]

---

[9] Ross's Compl. ¶ 4, 5.

[10] *Id.* at ¶ 6.

[11] Dfts' Compl. ¶ 9 [CIV. A. 12-2760 ECF 1-1].

[12] Settlement Agrt., First Recital, Dfts' Supp. Brief, Ex. A.

[13] *Id.* at 1.

[14] Ross's Compl. ¶¶ 7, 8; Dfts' Mem. in Supp. Mot. at 5.

[15] Settlement Agrt., Fifth Recital, Dfts' Supp. Brief, Ex. A; Dfts' Compl. ¶ 10.

[16] Pursuant to a July 14, 2006, Marketing Agreement between Ross and Meyer-Chatfield. Ross's Compl. ¶ 4; *see also* Settlement Agrt., Fourth Recital, Dfts' Supp. Brief, Ex. A.

As part of the Settlement Agreement, Balshe and Ross also agreed to form a new entity ("Newco") to commercially exploit the Patent.[17] Accordingly, Balshe formed *Institutional Pooled Benefits LLC* ("IPB"), a Delaware limited liability company.[18] Ross was required to execute all the documents required to assign to Newco (now known as IPB) "all right, title and interest in the Patent".[19]

### The Revised MRB Agreement

On June 26, 2008, Ross and Braverman Kaskey, P.C. (the law firm representing Ross), revised their *MRB Agreement*, specifying that it would be governed by Pennsylvania law,[20] and referencing the new entity Newco/IPB to be formed in accordance with the Settlement Agreement, which was to be owned by Balshe, Ross, and Meyer-Chatfield; and reiterating that *Ross would transfer all of his right, title and interest in the Patent.*[21]

### The Illinois Action and Decision

On February 10, 2012, Balshe and Meyer-Chatfield commenced an action against Ross in the District Court for the Northern District of Illinois, assigned to Judge Zagel; to *wit*: *Balshe LLC, The Simon Law Firm, and The Meyer-Chatfield Corporation v. Alan J. Ross and SAVE Associates*, CIV. A. 12-966 (the "Illinois Action"), to enforce the Settlement Agreement. On January 9, 2014, Judge Zagel issued a memorandum and order, writing, *in part*, that:

> By mid-September 2009, Balshe and Meyer-Chatfield agreed to and entered into the IPB Operating Agreement...[Ross had] refused to transfer [his] interest in the Patent to IPB, alleging that certain provisions contained in the IPB Operating Agreement were inconsistent with and contrary to the terms and conditions set forth in the Settlement Agreement. [Ross] contested...in particular, a provision 6(a) that would have prohibited [him] from attempting to dissuade banks from selling a particular type of policy to [Balshe and Meyer-Chatfield]...This court ordered [Ross] to transfer his remaining interest in the Patent to IPB in compliance with the Settlement Agreement upon removal of the language regarding the right to dissuade.
>
> On October 1, 2010, [Balshe and Meyer-Chatfield] filed with the Court an Operating Agreement with provision 6(a)

---

[17] Settlement Agrt. ¶ 1, Dfts' Supp. Brief, Ex. A.

[18] Ross's Compl. ¶¶ 15, 16; Dfts' Compl. ¶ 12.

[19] Settlement Agrt. ¶ 2, Dfts' Supp. Brief, Ex. A.

[20] Revised from a June 5, 2008, agreement amongst these parties allocating ownership and management rights to commercially exploit the Patent. Ross's Compl. ¶¶ 8, 9; Revised MRB Agrt. ¶ 11 [CIV. A. 12-2760 ECF 1-1]; Dfts' Compl. ¶ 12.

[21] Revised MRB Agrt. ¶ 2.

*stricken and signed by MRB Pooled Benefits and Institutional Longevity Assets LLC.*

*   *   *

*[Balshe and Meyer-Chatfield] claim that they have completed performance of their duties by forming IPB in conformance with the Settlement Agreement and are entitled to have all rights, title, and interests in the Patent transferred to IPB. [Ross] contend[s] that [he] is not required to transfer [his] remaining property interest in the Patent until the IPB Operating Agreement conforms to the Settlement Agreement...Balshe and [Meyer-Chatfield] transferred their equity interests in IPB to [Institutional Longevity Assets LLC] and MRB, respectively...There is nothing in the Settlement Agreement that restricts [them] from transferring their equity interests. The ownership rights provided in the IPB Operating Agreement, while not identical, are consistent with the rights provided in the Settlement Agreement.*

*   *   *

*The IPB Operating Agreement and the Settlement Agreement are in conformance regarding ownership and management rights. [Balshe and Meyer-Chatfield] have completed performance of the Settlement Agreement by forming the IPB and IPB Operating Agreement in accordance with the Settlement Agreement.*

*[Balshe and Meyer-Chatfield] contend that [Ross's] continued refusal to transfer his remaining interest in the [ ] Patent is a breach of the Settlement Agreement. Paragraph 2 of the Settlement Agreement expressly requires that [Ross] "execute all necessary documents to assign...all right, title, and interest in the patent held by Ross and [SAVE], and any of his/their affiliates, parents and assigns" to IPB. Instead of transferring his remaining interest to IPB, [Ross] recorded his remaining interest...with the USPTO on December 19, 2011.*

*[Ross has breached his] obligations under the Settlement Agreement to sign the IPB Operating Agreement and transfer [his] interest in the Patent to IPB. As a consequence, [Balshe and Meyer-Chatfield] have suffered a loss from not being able to exploit its patent interests. [Balshe and Meyer-Chatfield] have spent over three years and almost $2 million trying to develop business opportunities to exploit the Patent.*

* * *

> *[Ross is] ordered to execute the IPB Operating Agreement*
> *and transfer [his] right, title, and interest in the [ ] Patent to IPB.[22]*

## LEGAL STANDARDS OF REVIEW

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Tomboy*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Tomboy*, 550 U.S. at 570).

---

[22] Memorandum at 6, *Meyer-Chatfield, et al. v. Alan J. Ross, et al.*, CIV. A. 12-966 (N.D. Ill. 2012) [ECF 47-1].

The issue of *res judicata* can be resolved on a Rule 12(b)(6) motion, "when all relevant facts are shown by the court's own records, of which the court takes notice." *Evans Supplies and Communication Co., Inc. v. Elliot Lewis Corporation*, No. 06-5685, 2007 WL 1630187, at *3 (E.D. Pa. May 31, 2007) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). *See also Toscano v. Connecticut General Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) ("The defense of claim preclusion, however, may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision."). *Cf. Connelly Found. v. Sch. Dist. Of Haverford Twp.*, 461 F.2d 495, 496 (3d Cir. 1972) (*res judicata* may be raised in a motion to dismiss prior to an answer).

A court may also take judicial notice of the record from a previous court proceeding between the parties, *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n. 3 (3d Cir. 1988), "[n]ot for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Mumma v. High-Spec, Inc.*, No. 09-1447, 2009 WL 4723258, at *1 n. 1 (M.D. Pa. Dec. 2, 2009) (quoting *Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999)).

Here, neither party disputes that Pennsylvania state law applies to all of Ross's claims in this lawsuit, as well as to the claims of *res judicata* and collateral estoppel. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits). Under Pennsylvania law, the doctrine of *res judicata* "requires a showing that there has been (1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 173 (3d Cir. 2009) (citing *EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990));

*Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1189-90 (Pa. 2012) (citing *In the Matter of Iulo*, 766 A.2d 335, 337 (Pa. 2001)). The doctrine of collateral estoppel, on the other hand, requires a previous determination that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,* 458 F.3d 244, 249 (3d Cir. 2006) (citing *Henglein v. Colt Indus. Operating Corp.,* 260 F.3d 201, 209 (3d Cir. 2001)); *see also In re Stevenson,* 40 A.3d 1212, 1222 (Pa. 2012). Collateral estoppel customarily refers to issue preclusion, while *res judicata*, when used narrowly, refers to claim preclusion. The Third Circuit has noted that "the preferred usage" of the term *res judicata* "encompasses both claim and issue preclusion." *5 Unlabeled Boxes*, 572 F.3d at 174 (quoting *Venuto v. Witco Corp.,* 117 F.3d 754, 758 n. 5 (3d Cir.1997)). This Court will adopt this meaning.

## DISCUSSION

As this Court opines that many of the arguments made in the motion to dismiss will be resolved by the arguments offered regarding the doctrines of *res judicata* and collateral estoppel, this issue will be addressed first. The remaining arguments will thereafter be considered.

### Res Judicata and Collateral Estoppel

As stated, *res judicata* "requires a showing that there has been a final judgment on the merits in a prior suit involving the same claim and the same parties or their privies. The essential inquiry is whether the ultimate and controlling issue(s) has been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. *Chada v. Chada,* 756 A.2d 39, 43 (Pa. Super. 2000) (citing *Hammel v. Hammel,* 636 A.2d 214, 218 (Pa. Super. 1994) (citations omitted)).

Here, judicial notice is taken of Judge Zagel's memorandum and order in the Illinois Action, "[n]ot for the truth of the facts recited therein, but for the existence of the opinion," in which no one disputes the authenticity. Applying the elements of the doctrines of *res judicata* and collateral estoppel to the instant matter, this Court finds that: the parties in this case and the Illinois Action are one and the same, *see Green v. Cooper Hospital/University Medical Center*, No. 97-5745, 1997 WL 749475, at *1-2 (E.D. Pa. Dec. 3, 1997) (district court found identical parties where second action contained two less and two additional parties than the first action, but contained defendants common to both); that the central component and contention in both actions as evidenced by the Revised MRB Agreement (which explicitly references the Settlement Agreement)[23] and the Settlement Agreement itself, is the same – Ross's obligation to transfer all interest and rights in the Patent;[24] and lastly, that the federal judge, having considered the merits which led to the Illinois Action, compelled the parties' obligations as contemplated in both the Settlement and Revised MRB Agreements. Clearly, all the elements of the doctrine of *res judicata* have been met.

Ross argues, however, that this Court's decision regarding the application of the doctrines of *res judicata* and collateral estoppel is premature pending resolution of the appeal of Judge Zagel's decision. He is mistaken. Collateral estoppel "does not require the entry of a judgment, final in the sense of being appealable." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991); *see also Briggs v. Godby*, No. 08-5239, 2009 WL 4756390, at *6 n. 5 (E.D. Pa. Dec. 10, 2009). Rather, "'final judgment[ ] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Brown*, 951 F.2d at 569 (quoting Restatement (Second) of Judgments §13 at 132 (1982)). Further, "insistence on a final

---

[23] *See* Revised MRB Agrt., Seventh Recital.
[24] *See Id.* at ¶ 1; Settlement Agrt., ¶ 2, Dfts' Supp. Brief, Ex. A.

and fully appealed judgment can involve needless duplication and expense to decide the same issue or, alternatively, undue delay in a second action while the first action is brought to a complete finish." *In re Brown*, 951 F.2d at 569 (citing Restatement (Second) of Judgments §13 cmt. g). Thus, "for purposes of issue preclusion…'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* (quoting Restatement (Second) of Judgments §13); *see also Henglein*, 260 F.3d at 210 (citing *Brown* with approval); *Briggs*, 2009 WL 4756390, at *6 n. 5.

In his memorandum and order, Judge Zagel directs Ross to "execute the IPB Operating Agreement and transfer [his] right, title, and interest in the [ ] Patent to IPB". This directive is "sufficiently firm" for purposes of deciding the import and effects of the doctrines of *res judicata* and collateral estoppel upon this matter. Thus, the final judgment on the issues and claims in the Illinois Action that are common to this instant action will be considered to comprise an "essential similarity of the underlying events giving rise to the various legal claims," *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991) (citation omitted), between the same adversaries in both actions, thereby, fulfilling the requisite elements of the doctrines of *res judicata* and collateral estoppel. In considering the averments in Ross's Complaint and the Illinois Action decision, this Court finds that most of Ross's claims in the amended complaint have been adjudged by Judge Zagel, to *wit*: In Counts 1 through 7, Ross contends that a breach of contract occurred in particular instances in his relationship with Defendants. Specifically, Ross alleges that:

- In Count 1, Defendants breached the Revised MRB Agreement when Meyer-Chatfield, Braverman Kaskey, and IPB sent a demand letter in December 2008 that Ross comply with the Revised MRB Agreement.

11

- In Count 2, Defendants' breach occurred when Defendants entered into and approved a secret September 2009 agreement in breach of Section 3(a) of the Revised MRB Agreement.

- In Count 3, Defendants breached Section 4(c) of the Revised MRB Agreement by precluding Ross from enrolling policy owners into the PBT, which Meyer-Chatfield had the right to market pursuant to the Marketing Agreement between Ross, Meyer-Chatfield, and Bennett Meyer.

- In Count 4, Defendant Meyer-Chatfield is alleged to have withheld the final payment due Ross pursuant to the Revised MRB Agreement.

- In Counts 5 and 6, Defendants intentionally excluded SAVE from participating in the Management Committee of MRB.

- In Count 7, Defendant breached the June Agreement by excluding SAVE from participating in the ownership of IPB.

These claims cannot herein be re-litigated, since they were addressed by Judge Zagel as follows:

- Judge Zagel found that Ross was in breach of the Settlement Agreement (by refusing to sign the IPB Operating Agreement). Defendants were, therefore, justified in issuing the "demand letter" and cannot be considered in breach of the contract.

- As to the "Secret Agreement," Ross's signature is found on the IPB Operating Agreement, the same document Ross refers as the "Secret Agreement" in Count 2.[25] Attached to the IPB Operating Agreement is a statement by Ross that the execution thereof "does not in any way confirm or validate the legitimacy of the Bennett Meyer execution of this document."[26] However, Judge Zagel found the IPB Operating Agreement was in conformance with the Settlement Agreement, and ordered Ross to sign the IPB Operating Agreement.

- As to Ross's contention that Defendants breached Section 4(c) of the Revised MRB Agreement by precluding Ross from enrolling policy owners into the PBT, before any enrollments could occur, Ross had to first transfer the Patent to IPB, which he refused to do, and was subsequently ordered to comply in the Illinois Action.

- Judge Zagel further determined that Ross did not have a voting right or the ability to exercise managerial control under either the Settlement Agreement or the IPB Operating Agreement, and that the executed IPB Operating Agreement conferred a

---

[25] Ross's Coml. ¶¶ 55, 56.
[26] Dfts' Supp. Brief, Attachment, Ex. D [ECF 59-4].

10% *non-voting* membership interest to Ross in IPB. This judicial finding precludes Ross's claim that he was excluded from ownership in IPB.

In addition, because Judge Zagel's decision in the Illinois Action holds that Ross materially breached the June 26, 2008, Settlement Agreement and, by implication, the simultaneously executed Revised MRB Agreement, Ross's claim that Defendants breached the Revised MRB Agreement fails as a matter of law. It is a well-settled principle of contract law that "a material breach by one party to a contract entitles the non-breaching party to suspend performance." *Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 209 (3d Cir. 2011) (quoting *Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003)); *see also S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 376 (3d Cir. 1992) ("Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages. Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."). "It is true that Pennsylvania courts have "long recognized the established precept of contract law that a material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder." *J.K. v. Council Rock School Dist.*, 833 F. Supp. 2d 436, 454 (E.D. Pa. 2011); *see also LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009) ("It is equally well established, that '[a] party also may not insist upon performance of the contract when he himself is guilty of a material breach of the contract.'")).

Ross concedes to his own breach of contract and refusal to transfer ownership interest in the Patent. Ross's Complaint clearly states that "SAVE withheld transfer of the Patent."[27] Additionally, Ross declared that "[s]ince June 26, 2008, the date of the execution of the

---

[27] Ross's Compl. ¶ 16 n. 1.

Settlement Agreement, and to the current time, [he has] not engaged in any activity of any sort in

which [he has] attempted to transfer, sell or license the [ ] Patent to any third competitor, party or

entity of any sort."[28] Hence, Ross's claims of alleged breaches by Defendants fail, as a matter of

law, because Defendants' actions occurred *after* Ross's material breach; for example:

- The *December 2008* letter demanding that Ross sign the IPB Operating Agreement (Count 1);[29]

- The "*September 2009* Secret Agreement" (the IPB Operating Agreement) (Count 2);[30]

- Cutting off communication with Ross from *July 2009 to March 12, 2010* (Counts 3, 11);[31]

- Withholding a payment to Ross which was purportedly "due on *July 1, 2009*" (Count 4);[32] and

- By excluding Ross from participating in the management of MRB after it was formed in *September 2008* and from participating in the management and ownership of IPB *after* the Settlement Agreement was executed on June 26, 2008) (Counts 5, 6, 7, 10).[33]

As to Ross's claims for declaratory judgment pled in Counts 10 and 11, these also fail as

a matter of law because (1) Judge Zagel has addressed these arguments and (2) requests for

declaratory judgments that a contract has been breached are inappropriate where they merely

duplicate other claims for breach of contract in the same complaint, as is done here. *ATD-*

*American Co. v. Krueger Int'l, Inc.*, No. 12-0032, 2012 U.S. Dist. LEXIS 55650, at *35-36 (E.D.

Pa. Apr. 20, 2012).

In Count 12, Ross pleads for "specific performance" of the Revised MRB Agreement.

Clearly, Judge Zagel has ruled on this issue, by ordering the transfer of Ross's interest in the

Patent, and, therefore, no further comment is warranted. Consequently, it is this Court's findings

---

[28] Ross Decl., ¶ 3, Sept. 4, 2013, Dfts' Mem. Supp. Mot., Ex. A [ECF 41-2].

[29] Ross's Compl. ¶¶ 52-53.

[30] *Id.* at ¶¶ 55-56.

[31] *Id.* at ¶¶ 58, 85-86.

[32] *Id.* at ¶ 61.

[33] *Id.* at ¶¶ 64, 67, 70, 83.

that Counts 1, 2, 3, 4, 5, 6, 7, 10, 11, and 12 of Ross's Complaint are barred by the doctrines of *res judicata* and collateral estoppel and are, therefore, dismissed.

Ross titles Count 8 "promissory fraud" and contends that Defendants willfully misrepresented to Ross and SAVE that all management decisions would be approved and executed by unanimous vote, in violation of Section 3(a) of the Revised MRB Agreement.[34] Defendants contend that Ross's claim for promissory fraud is in actuality a breach of contract claim and precluded by the "gist of the action" doctrine. This Court agrees.

The gist of the action "doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010) (quoting *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citation omitted)). In some circumstances, "it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *eToll, Inc.*, 811 A.2d at 14 (alteration in original) (citation omitted). That the misconduct was fraudulent does not bar application of the gist of the action principle. *Pediatrix Screening, Inc.*, 602 F.3d at 548 (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002)); *see also Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. May 7, 2002) (a "breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging the contracting parties never intended to perform.").[35]

---

[34] Ross's Compl. ¶¶ 72-75.
[35] *See id.* at ¶ 74 ("... MC and BK never actually intended to recognize the unanimity terms of the Agreement and [ ] they willfully and knowingly misrepresented their actual intention to ignore Section

Fraud claims should be barred where they arose during the course of the parties' contractual relationship; where the allegedly fraudulent acts also were breaches of duties "created and grounded in the...contract[;]" and where the damages "would be compensable in an ordinary contract action [and] thus, the claim would essentially duplicate a breach of contract action." *Pediatrix Screening, Inc.*, 602 F.3d at 548 (citing *eToll, Inc.,* 811 A.2d at 20–21). That is, where fraud claims are "inextricably intertwined" with the contract claims, the gist of the action is contractual, and the fraud claim should be dismissed. *eToll, Inc.,* 811 A.2d at 21.

Here, Section 3(a) of the Revised MRB Agreement provides that all MRB management decisions will require the unanimous vote of the MRB's Executive Committee, comprised of David L. Braverman, Bennett Meyer, and Ross.[36] This Court finds that the complaint's numerous references to Section 3(a)[37] cannot belie the gist of Ross's actual claims in this matter, *i.e.*, claims of breach of the Revised MRB Agreement. Therefore, Ross's claim for promissory fraud duplicates his contract claims arising out of the Revised MRB Agreement and is, therefore, dismissed.

### *Remaining Counts Addressed in Defendants' Motion to Dismiss*

Defendants have not argued that Ross's remaining claims – fraud in the inducement (Count 9), fraudulent concealment (Count 13), and legal malpractice (Count 14) – are directly affected by the Illinois Action decision. However, this Court finds that fraud in the inducement and fraudulent concealment, as they relate to negotiations leading up to both the MRB Agreement and the Settlement Agreement,[38] are affected by Judge Zagel's decision and should

---

3(a) to Ross...."); *see also Id.* at ¶ 79 ("Plaintiffs were fraudulently induced into executing the Settlement Agreement....").

[36] Revised MRB Agrt. ¶ 3.

[37] *See* Ross's Compl. Counts 1, 2, 5, and 6 – all alleging various breaches of the Revised MRB Agreement.

[38] *See Id.* at Counts 9, 13.

likewise be dismissed. Notwithstanding, to the extent Defendants address these counts in their motion to dismiss, this Court is persuaded that dismissal of these counts is warranted, as will be addressed.

As stated, Ross alleges that he was "fraudulently induced" (Count 9) into executing the Settlement Agreement, when Defendants misled him that they would abide by Section 3(a), the unanimity of voting requirement, and misrepresented that he would be permitted to participate in the management of IPB. Where "'the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement[;]'" that "'[a]ll preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract[;]'" and that "'unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties; and its terms cannot be added to nor subtracted from by parol evidence.'" *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citations omitted)).

For the rule to apply there must be a writing that represents the "entire contract between the parties." *Yocca*, 854 A.2d at 436 (citing *Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)). To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...." *Id.* An integration clause that states that the writing is meant to represent the parties' entire agreement is a clear sign that the writing is meant to be just that, and thereby expresses all of the parties' negotiations, conversations and agreements made prior to its

execution. *Yocca*, 854 A.2d at 436. Under Pennsylvania law, the rule applies to fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation claims. *See Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 595 (E.D. Pa. 1999).

However, parol evidence may be introduced to vary a writing meant to be the parties' entire contract when a party avers that the contract is ambiguous or that a term was omitted from the contract because of fraud, accident, or mistake. *Yocca*, 854 A.2d at 437. The Pennsylvania Supreme Court has restricted the exception to allegations of fraud in the execution of a contract, and has refused to apply the exception to allegations of fraud in the inducement of a contract. *Id.* at n. 26. (citing *HCB Contractors v. Liberty Place Hotel Associates,* 652 A.2d 1278, 1279 (Pa. 1995)). Where the parol evidence rule will bar the admission of statements necessary to establish a contract or tort claim, a court may properly grant a motion to dismiss. *See Coram Healthcare Corp.,* 94 F.Supp.2d at 595; *see also Bray v. Dewese,* No. 07-4011, 2008 WL 623824, at *2 (E.D. Pa. Mar. 6, 2008). Other courts in this district have not hesitated to apply the parol evidence rule upon the existence of an incorporation/integration clause resulting in the dismissal of fraud in the inducement claims. *See Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008); *Cottman Transmission Systems v. McEneany*, No. 05-6768, 2007 WL 210094, at *8-9 (E.D. Pa. Jan. 19, 2007); *Interwave Technology, Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 WL 3605272, at *19 (E.D. Pa. Dec. 30, 2005).

Here, Ross does not aver that the Revised MRB Agreement is ambiguous, or that any terms were omitted due to fraud, accident, or mistake. In fact, the Settlement Agreement (clearly referenced in the Revised MRB Agreement) is a fully integrated written contract, evidenced by its terms and the integration clause, which reads as follows:

> This Agreement contains the entire agreement between the Parties relating to the rights herein granted and the obligations herein assumed, and completely

merges and supersedes any prior written or oral agreements or representations between the Parties concerning the subject matter thereof…All parties warrant that no statement, promise, representation, warranty, condition, inducement or agreement of any kind with respect to the subject matter of this Agreement shall be, or has been, relied upon by the respective Party unless specifically contained and incorporated herein.[39]

Further, there can be no "misrepresentation" with respect to Ross's ability to participate in the management of IPB when he negotiated for, with the assistance of other separate counsel (Stanley Twarog, Esquire, and Henry Sullivan, Esquire of the Boston-based firm, Mintz Levin)[40] and agreed in writing to a 10% *non-voting* interest, as provided in the Settlement Agreement.[41] Consistent with the case law cited, Ross's claims at Count 9 fail, as a matter of law, and are dismissed.

In Count 13 (fraudulent concealment), Ross asserts that but for Defendants' concealed assurances to Balshe that only Balshe and Meyer-Chatfield would maintain management and voting authority of IPB, Ross would not have executed the Settlement Agreement and that he was harmed by such assurances.[42] As stated, however, the court-enforced execution of the IPB Operating Agreement conferred a 10% *non-voting* membership to Ross, and no right to participate in the management of IPB's affairs.[43] All of the parties to the Settlement Agreement, including Ross, upon the advice of his counsel, knew and agreed that Ross would be excluded from the management of IPB. There was no concealment, much less fraudulent, of this portion of the Settlement Agreement; accordingly, Count 13 for fraudulent concealment is dismissed for failure to state a claim.

---

[39] Settlement Agrt. ¶ 19, Dfts' Supp. Brief, Ex. A.

[40] Dfts' Mem. in Supp. Mot. at 7.

[41] Settlement Agrt. ¶ 4, Dfts' Supp. Brief, Ex. A.

[42] Ross's Compl. ¶¶ 95-103.

[43] Settlement Agrt. ¶ 4, Dfts' Supp. Brief, Ex. A. *See also id.* at §5 (granting Meyer-Chatfield "the exclusive right to manage all aspects of [IPB's] involvement with BOLI"); *Id.* at §8 (granting Balshe "the exclusive right to manage all aspects of [IPB's] involvement with … COLI and … GOLI").

Turning to Ross's claim for legal malpractice (Count 14), addressed in the Defendants' motion to dismiss, Pennsylvania imposes a two-year statute of limitations on tortious conduct, including legal malpractice actions. *See* 42 Pa. C.S.A. §5524; *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). Pennsylvania favors strict application of statutes of limitations. *Knopick*, 639 F.3d at 606 (citing *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa. Super. 2003)). The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty. *Wachovia Bank, N.A. v. Ferretti*, 935 A2d 565, 572 (Pa. Super. 2007). Under the occurrence rule, "the statutory period commences upon the happening of the alleged breach of duty." *Id.* at 572 (quoting *Robbins v. Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 674 A.2d 244, 246-47 (Pa. Super. 1996)).

Ross alleges that the individuals and firm of Braverman Kaskey, P.C., in conspiracy with Meyer-Chatfield, breached their ethical and professional duty of care, good faith, and their fiduciary duty during negotiations that *lead to* the June 26, 2008, Settlement and Revised MRB Agreements.[44] Pursuant to Pennsylvania law, Ross had two years from the alleged breach of duty to bring a cause of action for legal malpractice against Defendants, *i.e.*, by June 26, 2010. Having brought this claim well past the two-year statute of limitations, Ross's claim fails and Count 14 is dismissed as time-barred.

### *Motion to Dismiss Based Upon Rule 12(b)(7)*

In light of the analysis made, this Court need not address Defendants' arguments under Rule 12(b)(7).

---

[44] *See* Ross's Compl. at ¶¶ 106, 107.

20

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted. An appropriate order consistent with this memorandum opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.C.J.*

21